**OLYMPIA COMPANY, INC. and Olympia Roofing Company, Inc., Plaintiffs-Appellants,**

v.

**The CELOTEX CORPORATION, et al., Defendants-Appellees.**

No. 84–3850
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 23, 1985.

---

W.J. Manion, Slidell, La., for plaintiffs-appellants.

Lemle, Kelleher, Kohlmeyer & Matthews, George Frazier, New Orleans, La., for Celotex.

Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Jack M. Alltmont, New Orleans, La., for Standard, Taylor & Carriere.

Before REAVLEY, TATE and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Appellants brought this antitrust action alleging claims of monopolization and attempted monopolization, unreasonable restraint of trade, price discrimination, and product tying. We affirm the district court's entry of summary judgment for the appellees, 597 F.Supp. 285, and because this appeal is so clearly frivolous, we assess expenses, attorneys' fees, and double costs against the appellants and their appellate attorney.

## I. PROCEDURAL BACKGROUND AND FACTS

We note initially that for purposes of a motion for summary judgment all facts and inferences must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Summary judgment evidence is generally composed of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any supporting affidavits. Fed.R.Civ.P. 56(c). Here, the district court ordered the parties to consolidate all factual contentions, claims for relief, defenses, and other affirmative matters in respective pretrial statements. The court specified in its order that any such matters not set forth in the pretrial statements would be deemed abandoned or withdrawn. We therefore evaluate the facts and contentions of the parties as reflected in the pretrial statements.

Appellants, Olympia Company, Inc., and Olympia Roofing Company, Inc., (hereinafter jointly referred to as Olympia) engaged in the business of securing roofing jobs and furnishing roofing services within the New Orleans area. In doing so, Olympia purchased roofing materials from appellee the Celotex Corporation (Celotex) and its business predecessors. Among Olympia's competitors were appellees Standard-Taylor Industries, Inc., (whose chief executive officer was appellee Robbins Taylor) and Standard Roofing Company of New Orleans, Inc., (whose chief executive officer was appellee Pierre F. Carriere) (hereinafter all such entities and individuals are jointly referred to as Standard).

For several years, Olympia was on Celotex's approved roofers list. This enabled Olympia to secure a Celotex roofing bond for any roof that was installed and repaired by an approved roofer using Celotex's materials in accordance with Celotex's specifications. According to Olympia, such roofing bonds were required by architectural specifications for virtually all large commercial roofing jobs, and by 1974 Celotex's roofing bonds were superior to those offered by competing suppliers of roofing materials in the New Orleans area.

Due to a dispute over credit terms, Celotex deleted Olympia from the list of approved roofers entitled to Celotex roofing bonds. According to Olympia, Celotex thereafter refused to deal with Olympia on the same terms offered Standard. Celotex continued to sell roofing supplies to Standard and to offer to Standard the Celotex roofing bonds. Olympia alleged that Standard was granted lower prices on certain materials by Celotex than those granted to Olympia, with an overall price differential of five percent. Olympia further alleged that Celotex obtained a dominant position in the relevant market, enjoying a more than sixty percent market share.

Olympia filed this action in 1976. As consolidated in its pretrial statement, Olympia's allegations were that Celotex and Standard committed the following violations of the antitrust laws: (1) monopolization and attempted monopolization of the relevant markets, (2) unreasonable restraint of trade within the relevant markets, (3) unlawful price discrimination, and (4) unlawful tying of the furnishing of roof-

ing bonds to the sale of roofing materials. Olympia's pretrial statement implied that Celotex and Standard conspired, but there was no specific allegation to that effect. Olympia sought treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15.

The ensuing litigation had an extended history in the district court, as evidenced by eleven volumes of record and six boxes of exhibits. During the four years following 1976, the case produced extensive discovery, several amendments to the complaint, a number of changes in Olympia's counsel and numerous extensions and continuances. On January 7, 1980, Celotex's and Standard's motions for summary judgment were ordered continued to allow Olympia another change of counsel for the purpose of clarifying the issues. It was on June 17, 1980, that the district court ordered the parties to file pretrial statements relating all facts and legal contentions. The court accepted Olympia's pretrial statement, although it was filed over four months late and subsequently amended twice.

The district court entered summary judgment for Celotex and Standard on all of Olympia's claims. The accompanying exhaustive opinion found that Olympia failed to produce evidence of antitrust injury or damages, and that Olympia failed to produce evidence to establish two or more necessary elements of each of the substantive claims.

Olympia appealed and again changed attorneys. Additionally, Olympia has filed a "Motion to Include Material Into the Appeal Record not Presented to District Court." Finally, Celotex and Standard request that this court impose sanctions against Olympia and its appellate counsel for filing a frivolous appeal.

## II. REQUIREMENT OF INJURY AND DAMAGES

■ Section 4 of the Clayton Act limits treble damages to a private litigant "who shall be injured in his business or property by anything forbidden in the antitrust laws." 15 U.S.C. § 15. Such a plaintiff must prove not only an antitrust violation, but also "cognizable injury attributable to the violation, and ... at least the approximate amount of the damage." *Chrysler Credit Corp. v. J. Truett Payne Co. Inc.*, 670 F.2d 575, 579 (5th Cir.), *cert. denied*, 459 U.S. 908, 103 S.Ct. 212, 74 L.Ed.2d 169 (1982). In particular, the plaintiff must prove *"antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (emphasis in original). Injury is required in section 4 actions regardless of the nature of the underlying antitrust violation. *See Bayou Bottling, Inc. v. Dr. Pepper Co.*, 725 F.2d 300, 304–05 (5th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 123, 83 L.Ed.2d 65 (1984) (monopolization, attempted monopolization, conspiracy in restraint of trade); *Chrysler Credit Corp.*, 670 F.2d at 579 (price discrimination); *Cash v. Arctic Circle, Inc.*, 85 F.R.D. 618, 622 (E.D.Wash.1979) (tying). While summary judgment is to be used cautiously in complex antitrust litigation, it is nevertheless available where no antitrust injury or damages have been presented. *See Bayou Bottling*, 725 F.2d at 303–05.

Olympia's theory of antitrust injury can be easily summarized. In its pretrial statement, the only element of injury or damages that Olympia attempted to identify and quantify was that attributable to the alleged price discrimination. Olympia stated that had it received the same five percent price reduction that Standard allegedly received, it would have made an increased profit of $38,157.65 from 1972 to 1976, and its sales would have increased by forty percent. However, in its pretrial statement Olympia failed to point to any evidence that would bear out this calculation. Instead, Olympia "propose[d] to offer proof of damages using this basic methodology and employing a ten year 'straight-line' projection of sales and loss [sic] net profits for a 'future' period of ten years from and after 1976." Olympia on appeal

has not presented any different theory of injury or damages, nor does it cite to any evidence that it contends creates a dispute of fact.

■ We agree with the district court's finding that Olympia's "claim of injury and for damages amounts to nothing more than unsupported assumptions, conclusory allegations, and undocumented hypotheses." Olympia has not produced any evidence tending to show antitrust injury beyond evidence of price difference. It states in its briefs, without any accompanying explanation, that affidavits that it filed in 1979 were sufficient to avoid summary judgment, but these materials contain no information relevant to injury or damages.[1] Olympia's proposed methodology is insufficient to survive a summary judgment motion absent allegations of, and evidence to support, the fact of injury, which are not to be found in this voluminous record. Because Olympia apparently chose to rest upon its pleadings on this issue rather than substantiate its claims with evidence, summary judgment is permissible. *See* Fed.R. Civ.P. 56(e). Since Olympia created no genuine issue of the material matters of injury and damages, and since Celotex and Standard were entitled to judgment as a matter of law, the district court's entry of summary judgment was appropriate. *See* Fed.R. Civ.P. 56(c).

■ Moreover, evidence of price discrimination is not, by itself, adequate evidence of damages. "[P]roof of a [price discrimination] violation does not mean that a disfavored purchaser had been actually 'injured' within the meaning of § 4" of the Clayton Act. *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562, 101 S.Ct. 1923, 1927, 68 L.Ed.2d 442, 448 (1981). "Price difference without more does not indicate the amount of lost sales or profits." *Chrysler Credit Corp.*, 670 F.2d at 582. Olympia cannot rely on "mere speculation and guesswork" to substantiate its damages. *See id.* Olympia's bare projection of future profits is insufficient to meet its evidentiary burden. Any coincidental financial problems Olympia may have suffered at the time the alleged price discrimination occurred is not by itself enough to demonstrate antitrust injury. *See id.* at 581–82.

■ Even if Olympia had been able to factually substantiate its claims, its theory of damages would be unacceptable. Olympia may not base its damage claim on calculations showing what would have occurred had it received an allegedly discriminatory price. *See M.C. Manufacturing Co., Inc. v. Texas Foundries*, 517 F.2d 1059, 1063–65 (5th Cir.1975), *cert. denied*, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976). Instead, Olympia must show what would have happened had there been no discriminatory prices granted to Standard. *Id.* at 1064. Olympia cannot show damages merely by stating that it would have benefited by sharing in the lower, discriminatory prices with Standard. This is because

> [r]estoration of the competitive freedom which the Sherman Act is designed to protect through elimination of the anticompetitive practice is accomplished here by disregarding the special conspiratorial price . . ., not by hypothetical broadening of the conspiracy to give [the defendant/buyer's] abnormally low price to [the plaintiff] as well.

*Id.* at 1065.[2]

## III. FRIVOLOUS APPEAL

■ Standard and Celotex request the award of damages and double costs as

1. Olympia summarized its arguments by claiming that "countervailing affidavits" filed in 1979 were sufficient to avoid summary judgment. These allegations were abandoned to the extent Olympia failed to include them in the pretrial statement, and in any event the materials Olympia referred to contain no information relevant to the issues of injury and damages.

2. Olympia also makes the frivolous argument that a recently passed Louisiana statute, La.Rev. Stat.Ann. § 39:1963(C) (West Supp.1985), shows a five percent price differential to be a "devastating advantage." This statute requires certain public contracts be awarded to minority businesses that bid within five percent of the lowest bidder. How this statute can show that Olympia suffered any damage escapes us.

sanctions against Olympia and its attorney for the filing of a frivolous appeal. Such an award may be made against an appellant under 28 U.S.C. § 1912 and Fed.R. App.P. 38, and against an attorney under 28 U.S.C. § 1927.[3] *See Hagerty v. Succession of Clement,* 749 F.2d 217, 221–22 (5th Cir.1984). A frivolous appeal is one which "involves legal points not arguable on their merits." *Id.* at 222 (citing *Howard v. King,* 707 F.2d 215, 220 (5th Cir.1983)). Sanctions against Olympia's appellate counsel are available if he has acted "unreasonably and vexatiously" to multiply the proceedings in this case. *See* 28 U.S.C. § 1927.

■ We have no difficulty in concluding that Olympia and its appellate counsel should be jointly assessed the sanctions of expenses, attorneys' fees, and double costs in connection with this appeal. Olympia has failed to produce any evidence of antitrust injury and its theory of damages has been expressly rejected by this Court in prior case law. Olympia's appellate counsel has made virtually no effort to point to evidence raising a genuine issue of material fact. His rambling briefs include citations to affidavits in the record which have little to do with the issues in this case, and which are unaccompanied by any explanation of what relevant evidence the cited affidavits supposedly contain.

Additionally, Olympia's appellate counsel made no attempt to address most of the issues raised in the district court's opinion. While we realize that the lack of damages or injury was enough to dispose of Olympia's action, we note that Olympia did not address enough of the requisite elements to obtain reversal on any of its substantive claims.[4] Instead, Olympia's appellate counsel's main concern appears to be the possibility of succeeding in a future malpractice action against one of Olympia's prior attorneys. Olympia also calls on this court to, among other things, stay bankruptcy proceeding against a non-party in order to allow deposition of one of its employees, although it fails to explain how or why we should take such action. Many, if not most, of Olympia's arguments are similarly puzzling and exasperating. We are hard pressed to imagine a more meritless, vexatious, or unreasonable appeal.

We therefore grant the appellees' requests for expenses, attorneys' fees, and

---

3. 28 U.S.C. § 1927 entitled Counsel Liability for Excessive Costs provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1912 entitled Damages and Costs on Affirmance provides:

Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs.

Rule 38 of the Federal Rules of Appellate Procedure entitled Damages for Delay provides:

If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.

4. Aside from the issue of damages, the district court dismissed Olympia's claims on the following grounds:

*Monopolization:* no adequate evidence of the relevant market, no evidence that Celotex possessed monopoly power, and no evidence that the alleged monopoly resulted from actions of Celotex rather than those of its competitors;

*Attempted monopolization:* no evidence of intent and no evidence of relevant market;

*Price discrimination:* no evidence of discriminatory prices, no evidence that alleged discrimination had a substantial effect on competition, no evidence that alleged price differences were not simply good faith attempts to meet competitors' prices, and no evidence that Standard was aware of any discrimination;

*Tying:* the allegedly tied products were not separate products; and

*Conspiracy to restrain trade:* no evidence of conspiracy.

Olympia's arguments on appeal are very difficult to decipher, but the only issues other than damages that it expressly addresses are relevant market, the existence of price differences, and conspiracy. As to the latter, Olympia makes no attempt to point to evidence that a conspiracy existed. We do not reach the substantive claims and express no opinion thereon, but we note these issues to illustrate the frivolousness of the appeal.

**894**

double costs against Olympia and its appellate counsel. However, rather than our determining the amount of expenses and attorneys' fees incurred by appellees in this appeal, we remand to the district court for such determination. *See Hagerty,* 749 F.2d at 223; *Lewis v. Brown & Root, Inc.,* 722 F.2d 209, 210 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984).

### IV.  SUMMARY

We affirm the district court's entry of summary judgment for the appellees. Due to the frivolous nature of this appeal, we grant appellees' requests to assess expenses, attorneys' fees, and double costs jointly against the appellants and their appellate counsel. We remand this case to the district court for a determination of the amount of expenses incurred on appeal and appellees' appellate attorneys' fees.

Judgment AFFIRMED; REMANDED for assessment of expenses and attorneys' fees.